UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs.     ) | VIOLATION OF SUPERVISED RELEASE REPORT |
| ) | |
| ) | Docket No.:   0207 1:14CR00296-4 |
| ROY SMITH   ) | |
| ) | |

**Prepared for:**   THE HONORABLE WILLIAM F. KUNTZ II, U.S. DISTRICT JUDGE

**Prepared by:**   Mike Imrek
Senior United States Probation Officer
347-408-9999
Michael_Imrek@nyep.uscourts.gov

**Assistant U.S. Attorney**
Matthew S. Amatruda
225 Cadman Plaza East
Brooklyn, NY 11201
718-254-7012
matthew.amatruda@usdoj.gov

**Defense Counsel**
Sally J.M. Butler
42-40 Bell Blvd, Suite 302
Bayside, NY 11361
718-279-4500
sallybutlerattorney@gmail.com

| | |
|---|---|
| **Date Supervision Commenced:** | May 3, 2017 |
| **Date Report Prepared:** | October 9, 2025 |
| **Scheduled Termination Date** | Life |
| **Release Status:** | At Liberty |

Updated:3/29/24-jmb/vdr

*Violation Report*  
*Roy Smith*  PACTS:422702   Page **2** *of 14*  
Case Number: 0207 1:14CR00296-4

## IDENTIFYING DATA

| | |
|---|---|
| **Date of Birth:** | October 21, 1965 |
| **Age:** | 59 |
| **Gender:** | Male |
| **SSN#:** | 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 |
| **PACTS#:** | 422702 |
| **FBI#:** | 673908X3 |
| **USM#:** | 36722-083 |
| **Legal Address:** | 910 Thieriot Avenue<br>Apt 143<br>Bronx, New York 10473 |
| **Cellular Telephone:** | 929-280-5973 |



## Original Offense and Previous Criminal History

Original Offense

**Count 1**:
Conspiracy to Possess with Intent to Distribute Heroin
21 U.S.C. §§ 846, § 841(a)(1) and (b)(1)(C)
Not more than 20 years imprisonment/$1,000,000 fine
(Class C Felony)

Offense Conduct

In November 2013, the New York City Police Department, Organized Crime and Drug Enforcement Strike Force (OCDESF) and the Federal Bureau of Investigation (FBI), began investigating a narcotics distribution organization that was operating in Brooklyn and Queens, New York, among other locations. The organization distributed narcotics (heroin) to lower-level traffickers in New York, Virginia, and North Carolina.

On June 13, 2014, Roy Smith (Smith) was arrested in Chesapeake, Virginia and waived a detention hearing on June 17, 2014, and was ordered removed to the Eastern District of New York for prosecution of the instant offense. Smith is responsible for traveling from Virginia to the Eastern District of New York to purchase 40 grams of heroin in November 2013.

Date of Plea or Guilty Verdict: November 9, 2016

Date Offense Ended: October 16, 2014

Summary of Prior Arrest History:

Smith's arrest history dates back to the age of fifteen (15) when he was arrested for robbery and has been arrested a total of forty (40) times. Smith has been convicted of crimes ranging from robbery, harassment, grand larceny, criminal possession of a controlled substance, forgery, disorderly conduct, criminal possession of stolen property, concealed weapon, resisting arrest, failure to appear, and conspiracy to violate the drug control act.

Criminal History Category:  V

**Original Sentence, Modification, and Previous Violation**

Sentence Date: May 3, 2017

Original Sentence:

Time Served followed by a life-time term of supervised release with the following special conditions: 1) the defendant shall maintain full-time verifiable employment and/or shall participate in an education or vocational training program as selected by the Probation Department; 2) the defendant shall participate in an outpatient drug treatment program approved by the U.S. Probation Department. The defendant shall contribute to the costs of such treatment not to exceed an amount determined reasonable by the Probation Department's sliding scale for substance abuse treatment services, and shall cooperate in securing any applicable third party payment, such as insurance or Medicaid. The defendant shall disclose all financial information and documents to the Probation Department to assess his ability to pay. The defendant shall not consume any alcohol or other intoxicants during and after treatment, unless granted a prescription by a licensed physician and proof of same is provided to the Probation Department.

The defendant shall submit to testing during and after treatment to ensure abstinence from drugs and alcohol; 3) the defendant shall abstain from the consumption of prescription medication classified as opiates, benzodiazepines, stimulates, depressants, sedatives or hypnotics unless the prescribing physician is fully aware of the offender's substance abuse history. The offender shall immediately notify the probation officer prior to filling any of the above listed prescription medications and permit the probation officer to contact any health care professional who prescribes any medication to the offender. The offender shall not purchase any medication via the internet unless such medication is prescribed by a healthcare professional who conducts an examination of the offender in person and; 4) the defendant shall submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Faliure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner. A $100 special assessment fee was also ordered at the time of sentencing.

Date of Modification: December 19, 2023

Modification:

> *"The defendant shall participate in an inpatient drug treatment/detoxification program approved by the U.S. Probation Office. Upon completion or discharge from the inpatient substance abuse treatment/detoxification program, the defendant shall participate in an outpatient substance abuse treatment program approved by the U.S. Probation Office. The*

*defendant shall contribute to the costs of any treatment not to exceed an amount determined reasonable by the U.S. Probation Office's Sliding Scale for Substance Abuse Treatment Services and shall cooperate in securing any applicable third-party payment, such as insurance or Medicaid. The defendant shall disclose all financial information and documents to the U.S. Probation Office to assess his or her ability to pay. The defendant shall not consume any alcohol or other intoxicants during and after treatment, unless granted a prescription by a licensed physician and proof of same is provided to the U.S. Probation Office. The defendant shall submit to testing during and after treatment to ensure abstinence from drugs and alcohol."*

Reason for Modification:

Since the commencement of Smith's term of supervision, he has continued to struggle with his sobriety, specifically with his relapse on February 15, 2022. Smith continued to attend outpatient treatment services and continued to submit negative urinalysis. On July 21, 2022, Smith again relapsed and tested positive for the presence of fentanyl. Despite continuing to attend outpatient treatment, Smith continued to test positive for fentanyl on the following dates: July 28, 2022; August 2, 2022; August 6, 2022, August 11, 2022; August 13, 2022; August 18, 2022, September 20, 2022; January 10, 2023. To Smith's credit, a urinalysis on January 16, 2023, yielded negative results for the presence of illicit substances.

As a result of Smith's battle with his addiction to fentanyl, he voluntarily admitted himself into an inpatient treatment program with Cornerstone of Medical Arts on April 1, 2023. Smith attended inpatient treatment with Cornerstone from April 1, 2023, until June 5, 2023. Unfortunately, Smith again relapsed and tested positive for the presence of fentanyl on July 7, 2023, and commenced outpatient treatment services on his own accord. On November 30, 2023, Smith reported to the Probation Department and tested positive for the presence of fentanyl due to being under extreme stress of his housing situation and being the sole caregiver of his ailing father who resides in Maryland. On November 30, 2023, Smith acknowledged his dangerous addiction to fentanyl and was presented with, and voluntarily singed, the Proposed Probation

*Violation Report*                                                                    *Page 7 of 14*
*Roy Smith*                            *PACTS:422702*            *Case Number: 0207 1:14CR00296-4*

Form 49- Waiver of Hearing, to include a special condition to attend long-term inpatient drug treatment.

Date of Revocation: None

**SPECIFIC VIOLATION CHARGE(S)**

The person under supervision failed to conform to the following conditions of supervised release as set forth in the Judgment Order dated May 3, 2017.

**Charge One:**

On or about February 12, 2024, Smith violated the following standard condition of supervision. *"You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the Court or the probation officer."* Specifically, on February 12, 2024, Smith traveled to Virginia Beach, Virginia, without prior approval from the Court or the probation officer.

**Evidentiary Support:**

On February 12, 2024, the Probation Department contacted Smith to facilitate a referral to inpatient substance abuse treatment. Smith notified the Probation Department that he was not able to report to the probation office as requested as he traveled without permission and relocated to his father's residence located at 400 South Military Highway, Virginia Beach, Virginia. Smith stated that he relocated to his father's residence to care for his ailing father who suffers from diabetes; glaucoma; ongoing heart issues; and recovering from kidney cancer. Smith further stated that he is the primary caretaker for his elderly father and further stated that he no longer

has a stable residence to return to in the Eastern District of New York and traveled to Virginia for stability to be with family.

**Charge Two:**

On or about March 7, 2024, Smith violated the following standard condition of supervision. *"You must follow the instructions of the probation officer related to the conditions of supervision."* Specifically, since March 7, 2024, Smith has failed to return from Virginia Beach, Virginia, as directed.

**Evidentiary Support:**

On February 13, 2024, the Probation Department contacted the Eastern District of Virgina and requested a pretransfer investigation to consider accepting supervision of Smith in their district due to his current residence. All circumstances of why Smith relocated to their district were explained and the Eastern District of New York agreed to investigate Smith's proposed residence.

On February 21, 2024, a home inspection was completed by the Eastern District of Virginia and Smith admitted to heroin use and subsequently also tested positive for fentanyl and cocaine during the initial home contact. Smith also advised the Eastern District of Virginia that he was not on his father's lease, and it was confirmed through the property management company that individuals on supervised release are not allowed to reside in the complex as per building policy. Due to Smith's illicit drug use; unemployment status; failure to obtain prior approval from probation to relocate; and the fact that Smith's father's complex does not allow

individuals on supervision to reside in the complex, the Eastern District of Virginia denied the request for Smith to relocate to their district.

On February 23, 2024, and March 7, 2024, the Probation Department discussed with Smith's counsel of record of Smith's noncompliance with his conditions of supervision and his current whereabouts in the Eastern District of Virginia and notified counsel that Smith must return to the Eastern District of New York.

On March 28, 2024; April 29, 2024; and July 31, 2024, the Probation Department repeatedly notified Smith that he must return to the Eastern District of New York forthwith as the Eastern District of Virginia has denied supervision of his case. Smith notified the undersigned officer that he remains in contact with his counsel of record to determine the best course of action to be the primary care of his father and comply with the directive to return to the Eastern District of New York.

On January 10, 2025, the Probation Department discussed the ongoing issue with Smith's counsel of record and notified counsel of Smith's unwillingness to return to the Eastern District of New York as directed. Smith's counsel advised that she has been in frequent contact with Smith, and he is aware that he must return to the Eastern District of New York. Smith disclosed to counsel the fear of him being in custody and his father passing away as his mother passed away when he was in custody for the instant offense. Counsel has continued to direct Smith to return on his own accord to address the noncompliance of his conditions of supervised release. To date, Smith has not returned to the Eastern District of New York as directed.

## RELEVANT INFORMATION /OVERALL ADJUSTMENT

### Residence/Family

Smith is reportedly residing with his ailing father in Virginia Beach, Virginia.

### Employment

Smith remains unemployed since relocating to Virginia.

### Substance Abuse

Smith has suffered with his sobriety since the commencement of supervision and has routinely tested positive for heroin, fentanyl and cocaine.

### Post-Conviction Risk Assessment Rating

The Post-Conviction Risk Assessment (PCRA) is an evidence-based, scientifically validated instrument developed to improve the effectiveness and efficiency of post-conviction supervision. The PCRA categorizes individuals on supervision in an effort to focus on the individuals who are at the greatest risk of recidivism. The Probation Department employs, among other things, the best available scientific data to influence supervision decisions, and a key element of the evidence-based approach is the use of the PCRA to achieve maximum, measurable reductions in recidivism.

### High/2

Individuals in this category have a 48% arrest rate and a 33% revocation rate.

The person under supervision scored High on the PCRA and has 6 factors present on the Violence Risk Assessment. This is in the 8.8% and leads to a classification of Category 2 risk to commit a violent offense. There were not enough individuals in this risk and violence category to calculate stable recidivism rates.

**SENTENCING OPTIONS**

**<u>Statutory Provisions Charge One and Two</u>**

**Charges One and Two:**

Upon a finding of violation of supervised release, the Court may continue the offender on supervised release with, or without, modifying or enlarging the conditions. The Court may also extend the term of supervised release, if less than the maximum was already imposed, pursuant to 18 U.S.C. 3583(e)(2). Alternatively, the Court may revoke supervised release and impose a term of incarceration of up to two years on any such revocation, pursuant to 18 U.S.C. 3583(e)(3), without regard to any term of imprisonment imposed on prior revocations.

The Court may also order a new term of supervised release to follow. 18 U.S.C. 3583(h). The new term of supervised release following a violation can be up to the maximum term of supervised release that was authorized at the original sentencing, which in this case is life, minus any custody ordered on a prior and the current violation(s). United States v. Rodriguez, 2014 WL 7331947 (2d Cir. Dec. 24, 2014).

(Maximum period of TSR available at the original sentencing minus custody on the instant violation minus custody imposed on prior revocations of the supervision term resulting from the instant offense.)

*Violation Report*                                                                                                    *Page 12 of 14*
*Roy Smith*                                    *PACTS:422702*            *Case Number: 0207 1:14CR00296-4*

### Guideline Provisions Charges One and Two

**Charges One and Two:**

The U.S. Sentencing Commission has issued policy statements for revocation of supervised release. These policy statements are advisory and non-binding on the Court. U.S. v. Anderson, 15 F.3d 278, 285-86 (2d Cir. 1994). The defendant is charged with a grade "C" violation as defined by U.S.S.G. 7B1.1(a)(3). Upon a finding of a grade "C" violation, the Court may revoke supervised release and impose custody or extend or modify the existing term of supervised release per U.S.S.G. 7B1.3(a)(2). Since a criminal history category of V was found applicable at the original sentencing, the custody term for the violation is 7-13 months per U.S.S.G. 7B1.4(a).

Pursuant to U.S.S.G. 7B1.3(c)(2), the minimum term of imprisonment may be satisfied by a custody term of at least four months followed by supervised release with a special condition of at least four months community confinement or home detention.

### SENTENCING RECOMMENDATION

At this time the Probation Department is requesting the issuance of a warrant for Smith to be bought before the Court in the Eastern District of New York to answer the above outlined Violation of Supervised Release.

If found guilty of a violation of supervised release, it is respectfully recommended that Smith be sentenced to twelve (12) months custody followed by three (3) years of supervised release with the following special conditions: 1) *The defendant shall participate in an inpatient drug treatment/detoxification program approved by the U.S. Probation Office. Upon completion or discharge from the inpatient substance abuse treatment/detoxification program, the defendant*

*Violation Report* Page 13 of 14
*Roy Smith*   *PACTS:422702*   *Case Number: 0207 1:14CR00296-4*

*shall participate in an outpatient substance abuse treatment program approved by the U.S. Probation Office. The defendant shall contribute to the costs of any treatment not to exceed an amount determined reasonable by the U.S. Probation Office's Sliding Scale for Substance Abuse Treatment Services and shall cooperate in securing any applicable third-party payment, such as insurance or Medicaid. The defendant shall disclose all financial information and documents to the U.S. Probation Office to assess their ability to pay. The defendant shall not consume any alcohol or other intoxicants during and after treatment, unless granted a prescription by a licensed physician and proof of same is provided to the U.S. Probation Office. The defendant shall submit to testing during and after treatment to ensure abstinence from drugs and alcohol;*

*2) The defendant shall participate in an outpatient drug treatment program approved by the U.S. Probation Office. The defendant shall contribute to the costs of such treatment not to exceed an amount determined reasonable by the U.S. Probation Office's Sliding Scale for Substance Abuse Treatment Services and shall cooperate in securing any applicable third-party payment, such as insurance or Medicaid. The defendant shall disclose all financial information and documents to the U.S. Probation Office to assess their ability to pay. The defendant shall not consume any alcohol or other intoxicants during and after treatment, unless granted a prescription by a licensed physician and proof of same is provided to the U.S. Probation Office. The defendant shall submit to testing during and after treatment to ensure abstinence from drugs and alcohol;*

*3) The defendant must abstain from the consumption of prescription medication classified as opiates, benzodiazepines, stimulants, depressants, sedatives, or hypnotics unless the prescribing physician is fully aware of the defendant's substance abuse history. The defendant shall immediately notify the probation officer prior to filling any of the above listed prescription medications and permit the probation officer to contact any health care professional who*

*Violation Report*  *Page 14 of 14*
*Roy Smith*             PACTS:422702     Case Number: 0207 1:14CR00296-4

prescribes any medication to the defendant. The defendant must not purchase any medication via the Internet unless such medication is prescribed by a healthcare professional who conducts an examination of the defendant in person; 4) The defendant shall participate in an educational or vocational training program as approved by the U.S. Probation Office; 5) The defendant shall maintain full-time verifiable employment and/or shall participate in an education or vocational training program as approved by the U.S. Probation Office; and 6) The defendant shall submit his or her person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e) (1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of their supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

RESPECTFULLY SUBMITTED:

ROBERT L. CAPERS
CHIEF U.S. PROBATION OFFICER

Prepared by:

*[signature]*

Mike Imrek
Senior U.S. Probation Officer
Michael_Imrek@nyep.uscourts.gov
347-408-9999

Approved by:

*[signature]*

Lee Kwok
Supervisory U.S. Probation Officer